UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **ERMIAS BETURE, ELISHA POLOMSKI, and JAMES SAMUELSON,** individually and on behalf of all others similarly situated, | Case No.: 17-5757 |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| vs. | **JURY TRIAL DEMANDED** |
| **SAMSUNG ELECTRONICS AMERICA** | |
| Defendant. | |

Plaintiffs Ermias Beture, Elisha Polomski, and James Samuelson, individually and on behalf of all others similarly situated, by their attorneys, file this Class Action Complaint against Defendant Samsung Electronics America ("Samsung"). The following allegations are based on personal knowledge as to Plaintiffs' own conduct and on the investigation conducted by their counsel as to all other allegations.

## SUMMARY OF THE ACTION

1.      This consumer class action is brought by Plaintiffs who allege that Samsung concealed a known material defect in Samsung Galaxy Note 4 and Galaxy Note 4 Edge smartphones (hereinafter and collectively "Galaxy Note 4" or "Note 4") that it designed, manufactured, marketed, sold, and distributed to its customers.  The defective component is the eMMC (embedded MultiMediaCard) memory, which prematurely fails, rendering Galaxy Note 4

smartphones inoperable (the "eMMC memory defect").

2.      Once this defect manifests, the phone will frequently freeze, restart and fail to boot, and ultimately become inoperable. Many Note 4 owners are using the "Wake Lock" app as a temporary band-aid fix, which appears to forestall the complete failure of the eMMC memory, at the expense of additional battery usage. The only solution to the eMMC memory defect is a motherboard replacement.

3.      The Note 4 smartphones went on the market in or around October 2014, and cost over $700 at most of the major U.S. carriers. Samsung touted the Note 4 as a premium and durable and flagship smartphone, replete with high-end features such as 3gb of ram, a 5.7-inch 1440p screen, stylus, optical image stabilization, 4k video recording, infrared blaster, and removable battery.

4.      The defect manifests both while Note 4 smartphones are inside and outside of the warranty period. It has left consumers across the country with Note 4 smartphones that do not work as intended, and indeed are rendered completely non-functional.

5.      Defendant knew or should have known about the eMMC memory defect, and despite this knowledge, it failed to disclose the defect to purchasers of Note 4 phones. Defendant then unjustly profited on this omission by routinely refusing to provide repairs free of charge.

6.      As a result of the eMMC memory defect, and the monetary costs associated with repairs and replacements, Plaintiffs and Class members have suffered injury in fact, incurred damages, and have otherwise been harmed by Defendant's conduct.

7.      Accordingly, Plaintiffs seek redress for Defendant's breach of implied warranties and violations of numerous federal and state consumer protection laws. Plaintiffs also seek money damages and equitable relief for Defendant's conduct described herein.

## PARTIES

8.     At all times relevant herein, Ermias Beture was a citizen of the United States, residing in Wake Forest, North Carolina.

9.     At all times relevant herein, Elisha Polomski was a citizen of the United States, residing in St. Cloud, Minnesota.

10.     At all times relevant herein, James Samuelson was a citizen of the United States, residing in Temecula, California.

11.     Defendant Samsung is a South Korean corporation formed under the laws of the State of Delaware with its headquarters in Ridgefield Park, New Jersey.

## JURISDICTION AND VENUE

12.     This Court has jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d).  The aggregated claims of the individual class members exceed the sum or value of $5,000,000, exclusive of interests and costs.  This is a putative class action in which more than two-thirds of the proposed plaintiff class are citizens of states other than the Defendant.

13.     This Court has jurisdiction over this action because Defendant is headquartered in the State of New Jersey within the boundaries of this judicial district; has consented to jurisdiction by registering to conduct business in the state; maintains sufficient minimum contacts in New Jersey; and otherwise intentionally avails itself of the New Jersey markets through promotion, sale, marketing and distribution of its Galaxy Note 4 smartphones in and from the state, which renders the exercise of jurisdiction by this Court proper and necessary as Samsung is "at home" in New Jersey.

14.     Venue is proper in this District, under 28 U.S.C. § 1391(b), because a substantial part of the events or omissions giving rise to the claims of at least one Plaintiff occurred in this

District.

## PLAINTIFF SPECIFIC ALLEGATIONS

### A. Plaintiff Ermias Beture

15.     Plaintiff Beture purchased a Galaxy Note 4 phone at a Sam's Club location on April 2, 2015, for approximately $178.00 on a two-year contract with Sprint. The fact that Defendant advertised and warranted it as a premium and durable flagship phone with high-end features was material to Plaintiff Beture and to other reasonable consumers.

16.     On or around February 1, 2017, after less than two years of ownership, Plaintiff Beture's Galaxy Note 4 smartphone started suffering from the eMMC memory defect, by becoming slow and sluggish, and started frequently restarting and failing to reboot.

17.     Plaintiff Beture installed the Wakelock app from the Google Play store, which has allowed the phone to partially function, but it continued to lag, freeze, reboot and display the "mmc_read failed" error.

18.     Plaintiff Beture purchased a new iPhone for approximately $650 on an installment contract because his Note 4 smartphone became too unreliable for his use.

19.     Plaintiff Beture had never previously rooted his phone, or otherwise modified the original operating system software. Plaintiff used and maintained his phone in a manner typical of a reasonable consumer.

### B. Plaintiff Elisha Polomski

20.     Plaintiff Polomski purchased a Galaxy Note 4 smartphone from T-Mobile on May 3, 2015 for $699.84. The fact that Defendant advertised and warranted it as a premium and durable flagship phone with high-end features was material to Plaintiff Polomski and to other reasonable consumers.

4

21.     On or around May 11, 2017, after approximately two years of ownership, Plaintiff Polomski's Galaxy Note 4 smartphone started suffering from the eMMC memory defect, by becoming slow and sluggish and started frequently restarting and failing to boot.

22.     Plaintiff Polomski initially installed the Wakelock app from the Google Play store, which allowed the phone to partially function for a few weeks, but shortly thereafter her Galaxy Note 4 smartphone became entirely inoperable.

23.     Plaintiff Polomski had never previously rooted her phone, or otherwise modified the original operating system software.  Plaintiff used and maintained her phone in a manner typical of a reasonable consumer.

24.     Plaintiff Polomski contacted Samsung for repair options, and was quoted an estimate of $70.31 plus shipping.

25.     Plaintiff Polomski sent her phone to Samsung on or about June 4, 2017. She accompanied her Phone with a request that Samsung preserve and return to her any parts that were replaced during the repair process.

26.     On or about June 26, 2017, Plaintiff Polomski received her phone from Samsung. Samsung charged her $182.89 to service and/or replace several parts. Samsung replaced the "PBA", which stands for Printed Board Assembly, another term for motherboard.

## C. **Plaintiff James Samuelson**

27.     Plaintiff Samuelson purchased a Galaxy Note 4 phone at an AT&T location in or around February 2015, for approximately $830.00, paid monthly on their interest free plan.  The fact that Defendant advertised and warranted it as a premium and durable flagship phone with high-end features was material to Plaintiff Beture and to other reasonable consumers.

28.     In or around January or February of 2017, almost exactly after two years of

ownership, Plaintiff Samuelson's Galaxy Note 4 smartphone started suffering from the eMMC memory defect, by becoming slow and sluggish, and started frequently restarting and failing to reboot.

29.     Plaintiff Samuelson installed the Wakelock app from the Google Play store, which has allowed the phone to partially function, but it continues to lag, freeze, reboot and display the "mmc_read failed" error.

30.     Plaintiff used and maintained his phone in a manner typical of a reasonable consumer.

## COMMON FACTUAL ALLEGATIONS

### A.  The Samsung Galaxy Note 4

31.     The Note 4 smartphone went on the market in or around October 2014, and cost over $700 on most of the major U.S. cellular carriers.

32.     Defendant marketed, promoted, and sold the Note 4 smartphones as premium and durable flagship smartphones, replete with high-end features, such as 3GB of RAM, a 5.7-inch 1440p screen, stylus, image stabilized camera, infrared blaster and removable battery.

33.     Defendant Samsung designed, manufactured, warranted, advertised, and sold Galaxy Note 4 smartphones to thousands of consumers throughout the United States and, upon information and belief, at least thousands in the states of California, Minnesota, and North Carolina and, upon information and belief, disseminated marking materials from New Jersey, its headquarters.

34.     Defendant marketed, promoted, and expressly warranted that the Note 4 phones were fully functioning smartphones without any faults in the eMMC memory.

35.     Plaintiffs purchased their Galaxy Note 4 smartphones manufactured by Defendant to be used for mobile computing and networking as represented by Defendant in their marketing

6

materials for all Galaxy Note 4 smartphones.

36.     Throughout the class period, Samsung uniformly marketed the Galaxy Note 4 smartphones as providing "users with the most unique and powerful mobile experience on the market." *See* https://news.samsung.com/global/samsung-introduces-the-latest-in-its-iconic-note-series-the-galaxy-note-4-and-showcases-next-generation-display-with-galaxy-note-edge (accessed July 6, 2017).

37.     Samsung touted the Galaxy Note 4 as follows: "Offering a new dimension in Samsung's unique Note culture, the Galaxy Note 4 blends an evolved S Pen with superior viewing, providing users with the most powerful mobile experience on the market with its 5.7-inch Quad HD Super AMOLED display, 16MP camera, fast charging, ultra power saving mode and                                        multitasking."                              *See* http://www.samsung.com/common/aboutsamsung/download/companyreports/2014_E.pdf at  p. 20 (accessed July 6, 2017).

38.     Samsung further stated that "[t]he team spent a lot of time in making sure no defects happen, mostly because the team was more passionate than ever with the expectation they had for the Galaxy Note 4. According to MK Song, a senior manager of the Main Manufacturing Team at the Mobile Communication Division of Samsung Electronics, this expectation influenced everyone who was involved in the Galaxy Note 4 project, from device development, component quality, hardware, device manufacturing to software." "How Quality Assurance of the Galaxy Note 4 is done in the factory" https://news.samsung.com/global/how-quality-assurance-of-the-galaxy-note-4-in-done-in-the-factory

39.     Samsung touted the rigorous testing of its Note 4 phones, and their reliability: "Samsung makes and sells hundreds of millions of smart devices each year, and it's very

important that each and every one is in line with its strict quality control standards. So, to make sure you can rely on its devices, including Galaxy Note 4, Samsung runs rigorous tests both during and after development and production." https://news.samsung.com/global/enduring-the-gluteus-maximus; *see also* https://news.samsung.com/global/thud-what-if-you-drop-your-galaxy-note-4.

40.     Samsung also touted the durability of the Note 4 phones: "The device not only looks beautiful, but offers a superior grip and enhanced durability." https://news.samsung.com/global/samsung-introduces-the-latest-in-its-iconic-note-series-the-galaxy-note-4-and-showcases-next-generation-display-with-galaxy-note-edge

41.     To this day, the Galaxy Note 4 remains a "an amazing phablet." *See* "Samsung Galaxy Note 4 review: Still an amazing phablet," dated April 21, 2017, http://www.expertreviews.co.uk/samsung/samsung-galaxy-note-4 (accessed July 10, 2017).

42.     Plaintiffs purchased Galaxy Note 4 phones manufactured, marketed and sold by Defendant because they were advertised and warranted as a premium and durable flagship phone. *See* "Samsung Galaxy Note 4 review: Still an amazing phablet," dated April 21, 2017, http://www.expertreviews.co.uk/samsung/samsung-galaxy-note-4 (accessed July 10, 2017).

**B.   The eMMC Memory Defect**

43.     A cell phone's internal memory is contained in the eMMC, which is short for "embedded Multi-Media Controller", and refers to "a package consisting of both flash memory and a flash memory controller integrated on the same silicon die." *See* https://www.datalight.com/solutions/technologies/emmc/what-is-emmc.

44.     Samsung Semiconductor, Inc. supplies the eMMC memory in the Note 4. *See* http://technoeck.blogspot.com/2015/02/samsung-note-4-alpha-teardown.html. As such, Samsung,

8

through its corporate affiliate, had exclusive knowledge of the eMMC defect at the time of the Note 4's manufacture.

45.     Today's smart phones almost always store their operating system and content on flash memory, and Samsung Semiconductor, Inc. is a leading manufacturer of flash memory: http://www.samsung.com/semiconductor/products/flash-storage/emmc/.

46.     Samsung Semiconductor, Inc. touts its experience in flash memory and eMMC storage stating that "[t]oday's mobile-connected world expects mobile devices to deliver seamless and long-lasting performance. Samsung's expertise in flash storage gives you complete freedom to design smartphones, tablets and other mobile devices that boast faster speed and better power efficiency." *Id.*   Samsung Semiconductor also states that "with improved speed, Samsung eMMC also provides sustained performance." *Id.*

47.     Note 4 smartphones suffer from a defect in their eMMC memory which leads them to lag, freeze, reboot, and display the "mmc_read failed" error pictured below:



*See* https://us.community.samsung.com/t5/Galaxy-Note-Phones/galaxy-note-4-could-not-do-normal-boot-mmc-read-failed-error/td-p/84750.

48.     Note 4 smartphones ultimately become completely inoperable because of the eMMC memory defect.

49.     The only solution to the eMMC memory defect error is a motherboard replacement, which involves a complete disassembly of the phone.

50.     There are hundreds of posts from Note 4 owners complaining about the eMMC memory defect on scores of threads on numerous message boards, including XDA Developers, Reddit, and Samsung Community's own message boards.

51.     The complaints are legion and include the following from XDA Developers (https://forum.xda-developers.com/note-4/help/note-4-freezing-restarting-t3348821    (accessed July 6, 2017):

- Hey guys, so I have a Note 4 and I am having this problem you have probably heard of where the phone will randomly shut off and when I try to turn it back on, there will be the download mode screen saying mmc read failed at the top left. I managed to fix the shut down with an app called Wake Lock from the play store, but now if I ever shut my phone off, it takes 15-20 battery pulls before it finally turns on, and a lot of the times when it does turn on, it goes to that download mode screen again. So, has anyone actually managed to fix this?

- well my note 4 is perfect now, the marshmallow update messed it all up with crashes and reboots. $185.00 and it looks like samsung replaced most of it. funny it worked perfect on 5.1 and never rebooted till the update. not happy with samsung but cheaper than a new phone. this problem is happening to allmost everyone after the update. wtf! wish they would help with the repairs and acknowledge the problem

- Yes agree, a lot of people had this freezing reboot issue after an update. So samsung should have addressed the problem, but look at there s7 battery problems, I d say sansung= cheap these days

- I have exactly the same emmc_read fail. My note 4 won't even turn on, no recovery mode no download mode can't connect to pc and won't charge. It's dead. It's out of warranty now so do you think I should take it and try to have it

repaired. There's a Samsung centre 10 minutes from me in Leeds. If they did yours for free maybe there's a chance they could do mine. Might aswell try

- Been following the thread for the last week and read every thread. I do have wakelock installed and running so am able to use my phone but I was getting the random reboots and having to pull the battery anyway. The problems I was facing like other is if the mobile was turned off it wouldn't boot up and a battery pull was needed.

- I've had my note 4 just over a year now and not had any problems at all. I've always had notes 1 2 and 3 and now 4. Never bothered rooting the note 4. So..... out the blue my phone starts restarting and freezing regular. I'm talking 15-20 times per day. Got no idea why but got so frustrated that I restored phone back to factory settings and it's still doing it.I'm 90% sure it's not memory as I have a 64gig memory card in it. And don't actually have many apps downloaded. I've cleared all cache as well via apps and also via the volume up power and home key method. Please tell me someone knows what the problem is here as I did searches on Internet and many are having the same problem.

- I've been having the same problem that started yesterday morning. I've tried a few different solutions but nothings worked, I get the feeling that my phone is dead and I'm not in warranty either. I'm going to approach Samsung but my guess is they will want more than the phone is worth to repair it. I've read about so many people having the same issues, its horrendous engineering on Samsungs part considering how much their phones cost to start with

52.    There are also pages of complaints the Samsung Community's message board

(https://us.community.samsung.com/t5/forums/v3_1/forumtopicpage/board-

id/GalaxyNotePhones/thread-id/12183/highlight/true/page/4 ) (last accessed July 11, 2017),

including the following:

- galaxy note 4 "could not do normal boot, mmc_read failed" error
  [ Edited ]
  Hi Friends.
  my note 4 is continuously hanging and freezing.i tried many methods to resolved the problem but having the same problem.is there anyone who can guide me about this problem.its seem hardware problem.

- Re: galaxy note 4 "could not do normal boot, mmc_read failed" error [ Edited ]
  I am 23 months into a 24 month contract. My SM-910F has suddenly developed exactly the same problem. Mine started 1 week ago. Freezes, reboot's, MMC read error etc. Started after i did an OTA towards the end of June. With 1 month to go on my contract, I am wondering if I have any grounds to return the phone.Never

liked iPhone but it appears I have to switch allegiances. Samsung has taken all Note 4 users for a spin.  BTW, my phone is unrooted.  Factory reset made no difference at all

53.    Many Note 4 owners have turned to the "Wakelock App"

(https://play.google.com/store/apps/details?id=eu.thedarken.wl&hl=en.) as a temporary stopgap

solution, which appears to buy time before the eMMC memory completely fails, at the expense

of additional battery usage (see https://forum.xda-developers.com/note-4/help/note-4-freezing-

restarting-t3348821 ) (accessed July 6, 2017):

- Mines being doing all this for the last week to 10 days and been driving me nuts. Flashing with odin hasn't made any difference. It al started after I woke up one morning to find my phone had rebooted on its own to recovery mode with it saying :

  Could not do normal boot.
  ddi : mmc_read failed
  etc
  etc

- It's done the same thing numerous times since with constant freezes, reboots and not booting at all until the battery is removed for 5 minutes. Then it can run fine or a couple of hours and then it starts all over again.

  Is this the set of symptoms that points to the new motherboard being required from Samsung repair centre?

- Yes it is!

  But you can install wakelock app from play store and set it to partial wake lock (5 option) this should stop the freezes.

  I have the same problem, been using that app for half a year to keep my phone running normal as it can be. The app keeps the cpu active(running) all the time so it does effect battery but not by much. At least the phone will run normal with no freezes or restarts just don't turn off phone or you might have trouble turning it on again.

  It is a temp fix, eventually you'll need to replace the motherboard!

- Thanks, yes after reading many pages on the net tonight about this problem i've installed WakelockPowerManagement on setting 4 with autostart enabled. Since

installing it the phone seems really snappy so what I don't get with that is how a power management app is helping with a hardware issue such as the motherboard failing?!

Some believe it's related to the last firmware patch sent out which is when mine also started having these issues. So either there is an issue in the firmware or it's caused a physical malfunction. I've had my Note 4 since launch day and it's been faultless until all this started recently and it's strange so many others have had it in the last month or so. Either that or the motherboard is failing on many devices all at the same age. But again how would software such as wakelock help reduce the symptoms of hardware failure?

- Thoughts from Wakelock developer (Darken)
  Quote:
  Originally Posted by 55drsa
  Wake lock (darken) on option 4 has brought my nearly-unusable note 4 back to normal function. Rebooted once today, and I noticed the wake lock app was off at the time. No idea why this works. I tried everything else previously - including wiping cache, replacing battery, and keeping the phone cool - I've emailed the developer, curious if this Wakelock fix provides any insight into what the underlying problem is.

  "I don't really know, but I can guess. I would guess that in one of their ROM updates Samsung made a mistake or went overboard/too aggressive on battery saving measures. Possibly reducing the cpu frequency too aggressive. Once the phone goes into a low power state / battery saving mode / whateveritis, it can't get itself reliably out of that state again. Aquiring a wakelock that keeps the CPU awake will prevent the phone from entering that state."

54.     According to the Google Play store there are between 100,000 – 500,000

installations of the Wakelock app, and 2,389 reviews of the app. *See*

https://play.google.com/store/apps/details?id=eu.thedarken.wl&hl=en (last accessed July 13,

2017). It appears that nearly all the reviews for the Wakelock app are from Note 4 owners,

illustrating the ubiquity of the defect. *Id.*

55.     The pervasive nature of the eMMC defect is further demonstrated by Samsung's

admission that the motherboard replacement part is on backorder, a fact that Note 4 owners have

spoken about (*see*: https://us.community.samsung.com/t5/forums/v3_1/forumtopicpage/board-

id/GalaxyNotePhones/thread-id/9147/page/37):

13

- I thought I would update you Mel. Many people on other forums who are having problems getting repairs for this issue are hypothesizing that Samsung is out of motherboards due to the frequency of the failures. On Saturday, I received an email from Samsung Support saying the repair of my phone is "placed on a temporary hold due to an unavailable part". When I called, they were unable to tell me when "the part" would be in.

  Just one more indication that this problem is endemic to the Note 4. I hope you will do what you can to escalate the issue so Samsung can get to the bottom of the problems and help Note 4 owners. Without an explanation about what is causing the failures, I have little confidence that the problem will not return to haunt me in the future even with the new motherboard.

56.     Samsung has been on notice of the eMMC defect in the Note 4 since at least early

2016 through complaints made to its own Samsung Community website:

https://us.community.samsung.com/t5/forums/v3_1/forumtopicpage/board-

id/GalaxyNotePhones/thread-id/269/highlight/true/page/1.

57.     Moreover, an XDA forum member has stated that he has seen internal documents

from Samsung indicating its knowledge of the eMMC defect, and spoken to a Samsung support

employee who also confirmed Samsung's knowledge of the defect (*see* https://forum.xda-

developers.com/note-4-sprint/help/note-4-bootloop-hardware-failure-t3467166):

- The Note 4 has a bit of history with eMMC failure. It's even happened with updates and Samsung and Sprint is apparently aware of it. A while back I saw that listed as an ongoing carryover of known issues that needed resolution. I don't have true stats on exchanges but several users here have repeatedly gotten deals on replacement phones, paying a small percentage when they failed- similar to yours.

*See also* https://forum.xda-developers.com/note-4/general/emmc-bug-fix-tried-sm-n910g-sm-n910p-sm-t3468721/page6 :

- All I'm convinced of is that Samsung has this information and Samsung doesn't want to talk about it.

- The initial support guy only confirmed that there was an ongoing eMMC failure that was noted as an update issue. He agreed it pertained to both OTA and Odin or Smart Switch. That is, in his opinion, he was inclined to agree with that theory. I've always felt it was suspicions like poor battery health or defective battery and heat that updates task the phone with that contributed to this issue. But if there is more

to it, only the update notes or ongoing update issue can confirm that. I don't know if those are still available but I recall seeing them on the web somewhere. The verbal confirmation from lower level support only gives a little support to the theories. I don't claim them to be fact, just theory and Samsung knows but doesn't share that.

58.    Moreover, and upon information and belief, since at least the middle of 2016, Samsung or Samsung authorized entities have been supplying manufacturer refurbished Note 4 phones that are locked to Android 5.1.1 by way of a baseband that does not match the Android version, and therefore does not allow these Note 4 phones to perform an over-the-air update to Android 6.0.1. Upon information and belief, Samsung configured these manufacturer-refurbished phones in this manner to forestall the eMMC defect since it is aware that the updating process accelerates      the      manifestation      of      the      eMMC      defect.      *See*,      e.g., https://www.reddit.com/r/galaxynote4/comments/55rbvm/got_a_new_refurbished_note_4_but_go t_a_question/;      https://forum.xda-developers.com/note-4/general/emmc-bug-fix-tried-sm-n910g-sm-n910p-sm-t3468721/page6.

## CLASS ACTION ALLEGATIONS

59.    Plaintiffs bring this lawsuit on behalf of themselves and all similarly situated individuals and entities, pursuant to Federal Rule of Civil Procedure 23(a), 23(b)(2), 23(b)(3), and/or 23(c)(4). Specifically, the classes consist of:

### Nationwide Class

**All purchasers in the United States who purchased a Samsung Galaxy Note 4 Smartphone.**

### California Subclass

**All purchasers in the state of California who purchased a Samsung Galaxy Note 4 Smartphone.**

15

**Minnesota Subclass**

**All purchasers in the state of Minnesota who purchased a Samsung Galaxy Note 4 Smartphone.**

**North Carolina Subclass**

**All purchasers in the state of North Carolina who purchased a Samsung Galaxy Note 4 Smartphone.**

Excluded from the Class are: (a) any Judge presiding over this action and members of their families; (b) Defendant and their subsidiaries and affiliates; and (c) all persons who properly execute and file a timely request for exclusion from the Class.

60.    *Numerosity*: The Class and Subclasses are comprised of at least hundreds of owners of Note 4 phones, making joinder impractical. Moreover, the Class and Subclasses are composed of an easily ascertainable, self-identifying set of individuals and entities who purchased Note 4 phones. The precise number of Class members can be ascertained through discovery, which includes Samsung's records. The disposition of their claims through a class action will benefit both the parties and this Court.

61.    *Commonality*: There are questions of law and fact common to the Class that will materially advance the litigation, and these common questions predominate over any questions affecting only individual Class members.  Among the questions common to the Class are:

      a.   Whether Samsung's Note 4 is defective in that the eMMC memory fails;

      b.   The origins and implementation of, and the justifications for, if any, Samsung's policies and technology relating to the eMMC defect and its manifestation in the Note 4;

      c.   When Samsung became aware of the eMMC defect in the Note 4 and how it responded to that knowledge;

d.  Whether Samsung actively concealed and/or failed to notify consumers of the eMMC defect in the Note 4;

e.  Whether Defendant knew of the Defect but failed to disclose the problem and its consequences to their customers;

f.  Whether a reasonable consumer would consider the eMMC memory defect or its consequences to be material;

g.  Whether Defendant's conduct violates state consumer protection laws as asserted herein;

h.  Whether Defendant's sale of Galaxy Note 4 smartphones with defective eMMC memory is unfair, false, misleading, or deceptive acts in the conduct of any trade or commerce;

i.  Whether Defendant breached the implied warranty of merchantability, by selling the Note 4 smartphones with defective eMMC memory;

j.  Whether Plaintiffs and the other Class members overpaid for their Note 4 phones as a result of the eMMC memory defect alleged herein;

k.  Whether Plaintiff and Class Members would have purchased their Galaxy Note 4 smartphones, and whether they would have paid a lower price for them, had they known that it contained the eMMC memory defect at the time of purchase;

l.  Whether Plaintiffs and the Class are entitled to compensatory damages, including, among other things: (i) compensation for all out-of-pocket monies expended by members of the Class for replacement or repair of the Note 4 smartphones phones; (ii) the failure of consideration in connection with and/or difference in value arising out of the variance between the Note 4 Smartphones as merchantable possessing a non-defective eMMC memory, and as actually manufactured and sold possessing a defective eMMC memory; and, (iii) whether Plaintiffs and the Class are entitled to all costs associated with repair and replacement of their Galaxy Note phones; and

m.  Whether Plaintiffs and the other Class members are entitled to equitable relief, including, but not limited to, restitution or injunctive relief.

62.  *Typicality*: Plaintiffs' claims are typical of the claims of the members of the Class

and Subclasses, as all such claims arise out of Defendant's conduct in designing, manufacturing,

marketing, advertising, warranting, and selling the Galaxy Note 4 phones. All of Plaintiffs' claims

are typical of the claims of the Class since Plaintiffs and all Class members were injured in the

same manner by Defendant's uniform course of conduct described herein.  Plaintiffs and all Class

members have the same claims against Defendant relating to the conduct alleged herein, and the

same events giving rise to Plaintiffs' claims for relief are identical to those giving rise to the

claims of all Class members.  Plaintiffs and all Class members sustained monetary and economic

injuries including, but not limited to, ascertainable losses arising out of Defendant's wrongful

conduct as described herein. Plaintiffs are advancing the same claims and legal theories on

behalf of themselves and all absent Class and/or Subclass members.

63.     *Adequate Representation*: Plaintiffs will fairly and adequately protect the interests

of the members of the Class and Subclasses and have no interests antagonistic to those of the

Class. Plaintiffs have retained counsel experienced in the prosecution of complex class actions

including, but not limited to, consumer class actions involving, *inter alia*, breach of warranties,

product liability, product design defects, and state consumer fraud statutes.

64.     *Predominance*: This class action is appropriate for certification because questions

of law and fact common to the members of the Class predominate over questions affecting only

individual members.

65.     *Superiority*: A class action is superior to other available methods for the fair and

efficient adjudication of this controversy, since individual joinder of all members of the Class is

impracticable. Should individual Class Members be required to bring separate actions, this Court

would be confronted with a multiplicity of lawsuits burdening the court system while also

creating the risk of inconsistent rulings and contradictory judgments. In contrast to proceeding on

a case-by-case basis, in which inconsistent results will magnify the delay and expense to all

parties and the court system, this class action presents far fewer management difficulties while

providing unitary adjudication, economies of scale and comprehensive supervision by a single court.

## FIRST CAUSE OF ACTION

### BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY
### (On Behalf of the Nationwide Class)

66.     Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

67.     Plaintiffs bring this claim on behalf of the Nationwide Class.

68.     Samsung is a "merchant" as defined under the UCC.

69.     The Note 4 smartphones are "goods" as defined under the UCC.

70.     Samsung impliedly warranted that the Note 4 phones were of a merchantable quality.

71.     Samsung breached the implied warranty of merchantability because the Note 4 phones were not of a merchantable quality due to the eMMC memory defect.

72.     Plaintiffs and Class members' interactions with Samsung suffice to create privity of contract between Plaintiffs and Class members, on the one hand, and Defendant, on the other hand; however, privity of contract need not be established nor is it required because Plaintiffs and Class members are intended third party beneficiaries of contracts (including implied warranties) between Samsung and the retailers who sell the Note 4 phones. Defendant's warranties were designed for the benefit of consumers who purchase(d) Note 4 phones.

73.     As a direct and proximate result of the breach of said warranties, Plaintiffs and Class members were injured and are entitled to damages.

74.     Defendant's attempts to disclaim or limit the implied warranty of merchantability vis-à-vis consumers is unconscionable and unenforceable. Specifically, Defendant's warranty

limitations are unenforceable because Defendant knowingly sold a defective product without informing consumers about the eMMC memory defect.

75.     The time limits contained in Defendant's warranty period were also unconscionable and inadequate to protect Plaintiffs and members of the Class. Among other things, Plaintiffs and members of the Class had no meaningful choice in determining these time limitations, terms which unreasonably favor Defendant. A gross disparity in bargaining power existed between Defendant and Class members, as only Defendant knew or should have known that the Note 4 phones were defective at the time of sale and that the Phones would fail well before their useful lives.

76.     Plaintiffs and Class members have complied with all obligations under the warranty or otherwise have been excused from performance of said obligations as a result of Defendant's conduct described herein.

77.     Defendant was provided notice of these issues by complaints lodged by consumers before or within a reasonable amount of time after the allegations of the eMMC memory defect became public.

78.     Prior to the filing of this Complaint, Plaintiffs sent a pre-suit notice letter concerning the eMMC memory defect, Plaintiffs' experiences with the defect and their intention to file the instant complaint alleging a breach of the implied warranty of merchantability on behalf of the National Class.

**SECOND CAUSE OF ACTION**
**VIOLATION OF THE MAGNUSSON-MOSS WARRANTY ACT,**
**15 U.S.C. §§ 2301 et seq. ("MMWA")**
**(On Behalf of the Nationwide Class)**

79.     Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

80. Plaintiffs and Class members are "consumers" within the meaning of the MMWA. 15 U.S.C. § 2301(3).

81. The Note 4 phones are "consumer products" within the meaning of the MMWA. 15 U.S.C. § 2301(1).

82. Samsung is a "supplier" and "warrantor" within the meaning of the MMWA. 15 U.S.C. § 2301(4)-(5).

83. This claim is being brought under Section 2310(d)(a) of the MMWA as a state cause of action over which this Court has supplemental jurisdiction which provides a cause of action for consumers who are harmed by the failure of a warrantor to comply with a written or implied warranty.

84. The Note 4 phones' implied warranties are accounted for under Section 2301(7) of the MMWA, and are warranties which Samsung cannot disclaim, when they fail to provide merchantable goods.

85. As set forth herein, Samsung breached their warranties with Plaintiffs and Class members.

86. Additionally, 15 U.S.C. § 2304(d) provides in pertinent part:

[T]he warrantor may not assess the consumer for any costs the warrantor or his representatives incur in connection with the required remedy of a warranted consumer product. . . . [I]f any incidental expenses are incurred because the remedy is not made within a reasonable time or because the warrantor imposed an unreasonable duty upon the consumer as a condition of securing remedy, then the consumer shall be entitled to recover reasonable incidental expenses which are so incurred in any action against the warrantor. *Id.*

87. The Note 4 phones share a common defect in that they possess defective eMMC memory.

88.     Despite demands by Plaintiffs and the Class for Samsung to pay the expenses associated with diagnosing and repairing the defective phones which were borne by consumers, Samsung has refused to do so.

89.     As a direct and proximate result of Samsung's breach of implied and express warranties pursuant to 15 U.S.C. § 2310(d)(1), Plaintiffs and Class members have suffered damages in an amount to be proven at trial.

90.     At least one of the Plaintiffs and the other Class members would suffer economic hardship if they returned their Phones but did not receive the return of all payments made by them. Because Samsung is refusing to acknowledge any revocation of acceptance and immediately return any payments made, Plaintiffs and the other Class members have not reaccepted their Phones by retaining them.

91.     The amount in controversy in each Plaintiffs' individual claims meets or exceeds the sum of $25. The total amount in controversy of this action in sum exceeds $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.

92.     Plaintiffs and Class members are entitled to recover damages as a result of Defendant' breach of warranties.

93.     Plaintiffs and Class members are also entitled to seek costs and expenses, including attorneys' fees, under the MMWA. 15 U.S.C. § 2310(d)(2).

### THIRD CAUSE OF ACTION
### VIOLATION OF THE SONG-BEVERLY CONSUMER WARRANTY ACT FOR BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (CAL. CIV. CODE §§ 1791.1 & 1792)
### (On Behalf of the California Subclass)

94.     Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

95.     Plaintiff Samuelson brings this Count on behalf of the California Subclass.

96.     Plaintiff Samuelson and the other Class members who purchased Note 4 smartphones in California are "buyers" within the meaning of CAL. CIV. CODE § 1791(b).

97.     The Note 4 smartphones are "consumer goods" within the meaning of CAL. CIV. CODE § 1791(a).

98.     Samsung is a "manufacturer" of the Note 4 smartphones within the meaning of CAL. CIV. CODE § 1791(j).

99.     Defendant impliedly warranted to Plaintiff Samuelson and members of the California Subclass that their Note 4 smartphones were "merchantable" within the meaning of CAL. CIV. CODE §§ 1791.1(a) & 1792; however, the Note 4 smartphones are not of the quality that a buyer would reasonably expect.

100.    162. CAL. CIV. CODE § 1791.1(a) states: "Implied warranty of merchantability" or "implied warranty that goods are merchantable" means that the consumer goods meet each of the following: (1) Pass without objection in the trade under the contract description; (2) are fit for the ordinary purposes for which such goods are used; (3) are adequately contained, packaged, and labeled; and (4) conform to the promises or affirmations of fact made on the container or label.

101.    The Note 4 smartphones would not pass without objection in the smartphone trade because of their eMMC memory defect and/or are not fit for the ordinary purposes for which such goods are used.

102.    Defendant breached the implied warranty of merchantability by manufacturing and selling Note 4 smartphones containing the eMMC memory defect. Furthermore, the defect has caused Plaintiff and members of the California Subclass to not receive the benefit of their bargain.

103.    As a direct and proximate result of Defendant' breach of the implied warranty of merchantability, Plaintiff and members of the California Subclass received goods whose defective

condition substantially impairs their value to consumers. Plaintiff and members of the California Subclass have been damaged as a result of the diminished value of Defendant's Note 4, the Note 4's malfunctioning, and the nonuse of their Note 4 smartphones.

104.   Plaintiff and members of the California Subclass have had sufficient direct dealings with either Defendant or their agents (e.g., dealerships and technical support) to establish privity of contract between Defendant on one hand, and Plaintiff and each of the members of the California Subclass on the other hand. In any event, privity is not required here because Plaintiff and each of the members of the California Subclass are intended third-party beneficiaries of contracts (including implied warranties) between Defendant and their retailers.  The retailers were never intended to be the ultimate consumers of the Note 4 smartphones and have no rights under the warranty agreements provided with the Note 4 smartphones; rather, the warranty agreements were designed for and intended to benefit the consumers only.

105.   Pursuant to CAL. CIV. CODE §§ 1791.1(d) & 1794, Plaintiff and the members of the California Subclass are entitled to damages and other legal and equitable relief, including, at their election, the purchase price of their Note 4 smartphones, or the overpayment or diminution in value of their Note 4 smartphones.

106.   Pursuant to CAL. CIV. CODE § 1794, Plaintiff and the other Class members are entitled to costs and attorneys' fees.

**FOURTH CAUSE OF ACTION**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(CAL. COM. CODE § 2314)**
**(On Behalf of the California Subclass)**

107.   Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

108.   Plaintiff Samuelson brings this Count on behalf of the California Subclass.

109. Defendant is and was at all relevant times a merchant with respect to smartphones under CAL. COM. CODE § 2014.

110. A warranty that the Note 4 smartphones were in merchantable condition is implied by law in the instant transactions, pursuant to CAL. COM. CODE § 2314.

111. These Note 4 smartphones, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which phones are used.

112. Defendant was provided notice of these issues by complaints lodged by consumers through blogs, warranty claims and elsewhere as detailed herein.

113. As a direct and proximate result of Defendant' breach of the warranties of merchantability, Plaintiff and the members of the California Subclass have been damaged in an amount to be proven at trial.

### FIFTH CAUSE OF ACTION
### VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW
### (CAL. BUS. & PROF. CODE § 17200, et seq.) ("UCL")
### (On Behalf of the California Subclass)

114. Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

115. Plaintiff Samuelson brings this Count on behalf of the California Subclass.

116. The UCL proscribes acts of unfair competition, including "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."

117. Defendant's conduct, as described herein, was and is in violation of the UCL. Defendant's conduct violates the UCL in at least the following ways: a. Knowingly and intentionally concealing from Plaintiff and the members of the California Subclass the existence of the eMMC memory defect in the Note 4 phones; b. Marketing the Note 4 phones as being functional and not possessing a defect that would render them useless; and c. Violating other California laws, including California laws governing false advertising and consumer protection.

25

118.     Defendant's misrepresentations and omissions alleged herein caused Plaintiff and the members of the California Subclass to purchase their Note 4 phones. Absent these misrepresentations and omissions, Plaintiff and the members of the California Subclass would not have purchased their Note 4 phones at the prices they paid (or purchased them at all).

119.     Defendant had a duty to disclose the eMMC memory defect because it had exclusive knowledge of the defect prior to making sales of Note 4 phones, and because Defendant made partial representations about the quality of the Note 4 phones, but failed to fully disclose the eMMC memory defect as well.

120.     As a result of Defendant' misrepresentations and omissions, Plaintiff and the members of the California Subclass have suffered injury in fact, including lost money or property..

121.     Plaintiff seeks to enjoin further unlawful, unfair, and/or fraudulent acts or practices by Defendant under CAL. BUS. & PROF. CODE § 17200.

122.     Plaintiff requests that this Court enter such orders or judgments as may be necessary to enjoin Defendant from continuing their unfair, unlawful, and/or deceptive practices, and to restore to Plaintiff and the members of the California Subclass any money they acquired by unfair competition, including restitution and/or restitutionary disgorgement, as provided for under CAL. BUS. & PROF. CODE §§ 17203 & 3345; and for such other relief set forth below.

**SIXTH CAUSE OF ACTION**
**VIOLATION OF THE CALIFORNIA CONSUMERS**
**LEGAL REMEDIES ACT**
**(CAL. BUS. & PROF. CODE § 1750, et seq.) ("CLRA")**
**(On Behalf of the California Subclass)**

123.     Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

124.     Plaintiff Samuelson brings this Count on behalf of the California Subclasss.

125.   The CLRA proscribes "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale of goods or services to any consumer."

126.   The Note 4 phones are "goods" as defined in CAL. BUS. & PROF. CODE § 1761(a).

127.   Plaintiff and the members of the California Subclass are "consumers" as defined in CAL. BUS. & PROF. CODE § 1761(d), and Plaintiff, the members of the California Subclass, and Defendant are "persons" as defined in CAL. BUS. & PROF. CODE § 1761(c).

128.   As alleged above, Defendant made numerous false representations concerning the benefits, performance, and capabilities of the Note 4 phones that were misleading. In purchasing the Note 4 phones, Plaintiff and the other the members of the California Subclass were deceived by Defendant's failure to disclose that the Note 4 phones are highly susceptible to eMMC memory failure.

129.   Defendant' conduct, as described herein, was and is in violation of the CLRA. Defendant' conduct violates at least the following enumerated CLRA provisions: a. § 1770(a)(2): Misrepresenting the approval or certification of goods; b. § 1770(a)(5): Representing that goods have sponsorship, approval, characteristics, uses, benefits, or quantities which they do not have; c. § 1770(a)(7): Representing that goods are of a particular standard, quality, or grade, if they are of another; d. § 1770(a)(9): Advertising goods with intent not to sell them as advertised; and e. § 1770(a)(16): Representing that goods have been supplied in accordance with a previous representation when they have not.

130.   Plaintiff and the members of the California Subclass have suffered injury in fact and actual damages resulting from Defendant' material omissions and misrepresentations because,

inter alia, they lost money when they purchased their Note 4 phones, and/or paid an inflated purchase price for the Note 4 phones, and/or later expended sums of monies to repair their defective Note 4 phones.

131.    Defendant knew, should have known, or were reckless in not knowing that the eMMC memory defect in the Note 4 phones rendered them not suitable for their intended use.

132.    Defendant had a duty to disclose the eMMC memory defect because Samsung had exclusive knowledge of the defect prior to making sales of Note 4 phones and because Defendant made partial representations about the quality of the Note 4 phones, but failed to fully disclose their defect.

133.    The facts concealed and omitted by Defendant to Plaintiff and the members of the California Subclass — that the Note 4 phones are defective and fail prematurely — are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase the Note 4 phones or pay a lower price. Had Plaintiff and the members of the California Subclass known about the defective nature of the Note 4 phones, they would not have purchased their Note 4 phones, or would not have paid the prices they paid.

134.    This cause of action seeks injunctive relief at this time. However, Plaintiff has sent a demand letter to Defendant via certified mail pursuant to the requirements of the CLRA in order to provide the notice required by CAL. CIV. CODE § 1782(a).  The CLRA letter advises Defendant that it is in violation of the CLRA and must correct, replace or otherwise rectify the goods alleged to be in violation of CAL. CIV. CODE § 1770. Defendant is further advised therein that in the event the relief requested has not been provided within thirty (30) days, Plaintiff will amend the complaint to include a request for monetary damages pursuant to the CLRA. If Defendant do not correct, replace, or otherwise rectify the goods and issues alleged in Plaintiff's

CLRA notice or this complaint within the statutorily proscribed 30-day period, Plaintiff intends to amend this complaint to seek both injunctive relief and monetary damages against Defendant pursuant to the CLRA, CAL. CIV. CODE §§ 1781 and 1782.

135.   Plaintiff further seeks an order awarding costs of court and attorneys' fees pursuant to CAL. CIV. CODE § 1780(e).

**SEVENTH CAUSE OF ACTION**

**(MINNESOTA'S CONSUMER FRAUD ACT)**
**(MINN. STAT. § 325F.69, *et seq.*)**
**(On behalf of the Minnesota Subclass)**

136.   Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

137.   Plaintiff Polomski asserts this cause of action on behalf of herself and the Minnesota Subclass.

138.   Defendant's practices, acts, policies and course of conduct, as described above, were intended to, and, in fact, did induce, Plaintiff Polomski and the members of the Minnesota Subclass to purchase Galaxy Note 4 smartphones with defective eMMC memory.

139.   Defendant sold and/or leased the Galaxy Note 4 knowingly concealing that they contained the manufacturing and materials and/or workmanship defects.

140.   Defendant's practices, acts, policies and course of conduct are actionable in that: Defendant actively and knowingly misrepresented to Plaintiff Polomski and the members of the Minnesota Subclass at the time of their purchase that the Galaxy Note 4, including its manufacturing, materials, and/or workmanship , did not contain any material defects, and were in good working order and merchantable.

141.   Defendant failed to give adequate warnings and notices regarding the use, defects and problems with the Note 4 phones' eMMC memory to consumers who purchased said

Galaxy Note 4, despite the fact that Defendant possessed prior knowledge of the inherent defects to the Galaxy Note 4's eMMC memory.

142. Defendant failed to disclose to Plaintiff Polomski and the members of the Minnesota Subclass, either through warnings or recall notices, and/or actively concealed the fact from them that the eMMC memory was defective, despite the fact that it learned of such defects in at least as early as June 2015.

143. Defendant's actions and/or omissions caused Plaintiff Polomski and the members of the Minnesota Subclass to expend sums of money at its repair centers and elsewhere to repair and/or replace the eMMC memory and/or motherboard and/or entire smartphone, despite the fact that Defendant had prior knowledge of the defects at the time of placing said Galaxy Note 4 smartphones into the stream of commerce. Moreover, Defendant's post-sale failure to repair Plaintiff Polomski's and the Minnesota Subclass members' phones without charge amounted to deceptive conduct under the Minnesota Consumer Fraud Act and occurred within six years of initiating this action.

144. Defendant's marketing, advertising and promoting of its Note 4 phones was deceptive because it concealed and failed to reveal the known defect in the phones.

145. Defendant occasionally, through its agents and representatives, has admitted to some Note 4 owners by its words and action, that the defect is known by Defendant and should be covered by its warranties and denied this to others. Defendant thereby maintained a secret warranty practice for some while denying it for others, thus constituting an unfair, deceptive, arbitrary and unconscionable trade practice.

146. Each and all of the aforementioned conduct is and was deceptive, false, fraudulent and constitutes an unconscionable commercial practice in that Defendant has, by the

use of false or deceptive statements and/or knowing intentional material omissions, misrepresented and/or concealed the true defective nature of the eMMC memory.

147.    In making these misrepresentations of fact and/or material omissions to prospective customers while knowing such representations to be false, Defendant misrepresented and/or knowingly and intentionally concealed material facts and breached its duty not to do so.

148.    Plaintiffs and members of the Minnesota Subclass were deceived by and relied upon Defendant's affirmative misrepresentations and failures to disclose, including but not limited to, the representations about the vehicle's safety and warranty benefits.

149.    There was a causal nexus between Defendant's deceptive and unconscionable commercial practices and Plaintiff Polomski and the damage to the members of the Minnesota Subclass as alleged herein. Therefore, Plaintiff and the members of the Minnesota Subclass are entitled to recover actual and/or statutory and/or punitive damages and/or trebled damages to the extent permitted by law, including class action rules, in an amount to be proven at trial.

150.    As a result, Plaintiff and the members of the Minnesota Subclass seek restitution of all monies that Samsung received as a result of selling the Note 4 phones to Plaintiffs and the members of the Minnesota Subclass with an inherent defect at the time of purchase, and as a result of forcing Plaintiffs and the members of the Minnesota Subclass to expend substantial sums of money for the repair and/or replacement of their Note 4 phones, despite the fact that Defendant had prior knowledge of the Galaxy Note 4's eMMC memory defect.  Plaintiff is informed and believes that the amount of said restitution is unknown at this time, but will seek relief to amend this complaint at the time of trial, when the same has been ascertained.

151.     In addition, Plaintiff Polomski and the members of the Minnesota Subclass seek

punitive damages and reasonable attorneys' fees.  Plaintiffs also seek a declaratory judgment

that the eMMC defect must be repaired at Defendant's expense.

**EIGHTH CAUSE OF ACTION**
**(MINNESOTA'S PRIVATE ATTORNEY GENERAL STATUTE)**
**(MINN.STAT. § 8.31 *et seq.*)**
**(Brought on behalf of Minnesota Subclass)**

152.     Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

153.     Plaintiff Polomski and the members of the Minnesota Subclass are consumers.

154.     Plaintiff Polomski and the members of the Minnesota Subclass were injured by

Defendant's sale of merchandise.

155.     Plaintiff Polomski and the members of the Minnesota Subclass have been injured

by Defendant's violation of the Minnesota Consumer Fraud Act.

156.     Plaintiff Polomski and the members of the Minnesota Subclass have suffered

damages with a causal nexus to Defendant's above-alleged misrepresentations, omissions and

deceptive practices.

157.     This action will benefit the public interest and therefore meets the requirements

of Minnesota's Private Attorney General Statute.

**NINTH CAUSE OF ACTION**
**(NORTH CAROLINA BREACH OF IMPLIED WARRANTY OF**
**MERCHANTABILITY)**
**(IN THE ALTERNATIVE)**
**(Brought on behalf of North Carolina Subclass)**

158.     Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

159.     Plaintiff Beture brings this claim individually and on behalf of the North Carolina

Subclass.

160.    As detailed herein, Note 4 phones are not "fit for the ordinary purposes for which such goods are used." N.C. Gen. Stat. § 25-2-314. Specifically, Plaintiff's Note 4 ceased to function after less than two years of operation, despite Defendant's advertisement representing Note 4 smartphones as premium and durable flagship phones with high-end and operational features, as described above.

161.    The durational limitation of the implied warranty of merchantability is ineffective because it was not "conspicuous," insofar as it was buried in the box that contained the phones of Plaintiffs and the members of the North Carolina.  The durational limitation of the implied warranty of merchantability is also ineffective because it was not "conscionable", insofar as Samsung maintained far superior bargaining power and knowledge as the world-wide leading manufacturer of smartphones (including their component memory chip parts).

162.    Plaintiff and members of the North Carolina Subclass would not have purchased their Note 4 phones or would have paid less for them had they known the true defective nature of the Note 4 phones, and specifically their eMMC memory defect causing them to fail well before the end of their useful lifespans.

163.    As a result of Defendant's breach of warranty, Plaintiff and the members of the North Carolina Subclass have been damaged in the amount of the purchase price or, in the alternative, the diminished value of their Galaxy Note 4 phones and any consequential damages resulting from their purchases.

## TENTH CAUSE OF ACTION
### (VIOLATION OF THE NORTH CAROLINA CONSUMER PROTECTION ACT)
### (N.C. GEN. STAT. § 75-1.1, *et. seq*.)
### (Brought on behalf of North Carolina Subclass)

164.    Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

165. Plaintiff Beture brings this claim individually and on behalf of the North Carolina Subclass.

166. Plaintiff and the members of the North Carolina Subclass are consumers who purchased Note 4 phones, which are consumer goods.

167. Plaintiff and the members of the North Carolina Subclass are entitled to the protections of the Consumer Protection Act, N.C. Gen. Stat. § 75-1.1, *et. seq.* (the "Act") and may recover damages pursuant to the provisions of the Act.

168. N.C. Gen. Stat. § 75-1.1 makes unlawful " [ u ] nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce."

169. Defendant engaged in unfair methods of competition in or affecting commerce, and unfair or deceptive acts and/or practices in or affecting commerce, through their advertisements and packaging of Note 4 smartphones, by representing to Plaintiff and members of the North Carolina Subclass that the products were premium and durable smartphones with high-end features. Such pattern of conduct was uniform in nature with respect to the marketing and sale of the Product.

170. Defendant also knowingly concealed, suppressed and consciously omitted material facts from Plaintiff and other members of the members of the North Carolina Subclass knowing that consumers would rely on the advertisements and Defendant's uniform representations concerning the Note 4's high-end features and functionality in purchasing their Note 4 phones.

171. Defendant's acts and omissions possessed the tendency or capacity to mislead or create the likelihood of deception.

172.   Defendant's acts and omissions were and are unfair because they offend established public policy.

173.   Defendant's acts and omissions were and are immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.

174.   Defendant's acts and omissions were and are unfair because they amount to an inequitable assertion of their power or position.

175.   Until the present, Defendant knowingly accepted the benefits of their deception and improper conduct in the form of profits from the increased sale of the Note 4.

176.   As a proximate result of the above-described Consumer Protection Act violations, Plaintiff and members of the North Carolina Subclass: (a) purchased and used Note 4 smartphones when they would not otherwise have done so; (b) suffered economic losses consisting of the Note 4 cost of purchase or, alternatively, the diminished value of the Note 4 phones with the eMMC defect; (c) suffered and/or will suffer additional economic losses in purchasing another smartphone; and (d) suffered and will suffer additional economic losses incidental to the eMMC memory defect.

177.   As a direct and proximate result of these unfair, deceptive and unconscionable commercial practices, Plaintiffs and the members of the North Carolina Subclass have been damaged in an amount in excess of $10,000, and are entitled under N.C. Gen. Stat. § 75-16 to recover treble damages as well as attorneys' fees and costs.

## ELEVENTH CAUSE OF ACTION
## (UNJUST ENRICHMENT)
## (IN THE ALTERNATIVE)
### (On Behalf of the Nationwide Class and/or the Individual Subclasses)

178.   Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

179.    Plaintiffs brings this claim individually and on behalf of the Nationwide Class and/or individual Subclasses.

180.    Plaintiffs and Class Members have conferred a benefit on Defendant by purchasing their Note 4 phones. Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff's and Class Members' Note 4 purchases. Retention of such revenues under these circumstances is unjust and inequitable because of the fatal memory chip defect which has caused injury to Plaintiffs and the Class by materially reducing the functionality of their phones. Defendant's actions caused further injuries to Plaintiffs and the Class because they would not have purchased their Note 4 phones or would have paid less for them if the true characteristics of the phones had been known at the time of purchase.

181.    Because Defendant's retention of the non-gratuitous benefit conferred on it by Plaintiffs and the Class Members is unjust and inequitable, Defendant must pay restitution to Plaintiffs and the Class Members for their unjust enrichment, as ordered by the Court.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment as follows:

a.      For an order certifying the proposed Class and Subclasses and appointing Plaintiffs and their counsel to represent the classes;

b.      For an order awarding Plaintiffs and Class and Subclass members actual, statutory, punitive, and/or any other form of damages provided by and pursuant to the statutes cited above;

c.      For an order awarding Plaintiffs and Class and Subclass members restitution, disgorgement and/or other equitable relief provided by and pursuant to the statutes cited above or as the Court deems proper;

d.      For an order or orders requiring Defendant to adequately disclose and remediate the eMMC memory defect.

e.      For an order awarding Plaintiffs and the Class and Subclass Members pre-judgment and post-judgment interest;

f.      For an order awarding Plaintiff and the North Carolina Subclass Members treble damages and attorneys' fees as provided for under N.C. Gen. Stat. §§ 75-16 and 75-16.1;

g.      For an order awarding Plaintiff and the Class and Subclass Members reasonable attorneys' fees and costs of suit, including expert witness fees;

h.      For an order awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all claims so triable.

Dated: August 4, 2017

By:

Gary S. Graifman, Esq.
**KANTROWITZ GOLDHAMER
& GRAIFMAN, P.C.**
210 Summit Avenue
Montvale, New Jersey 07645
Tel: (201) 391-7000

Nicholas A. Migliaccio, Esq.*
Jason S. Rathod, Esq.*
**MIGLIACCIO & RATHOD LLP**
412 H Street N.E., Ste. 302
Washington, DC 20002
Tel: (202) 470-3520

* *pro hac vice* admission to be sought